Thank you very much, Your Honor. Thank you. Or do we need to stay sitting here? I can do that, too. But you're free to tune in to the other arguments. Thank you very much. If you'd call the next case, Mr. Huron. Thank you, Counsel. If Ms. Baez and Mr. Gary would please disconnect. Mr. Ganji, please stay on the line for your fifth session. Counsel, on the next case, should please turn on their mics and cameras. The next case is 19-1158, United States v. Tignor. Thank you, Counsel. We are ready to hear you. Good morning, Your Honors, and may it please the Court. My name is Kathleen Shen, and I represent the appellate, Mr. Scott Tignor. The scope of this appeal has narrowed considerably since the opening brief was filed. The government now admits that plain error occurred when Mr. Tignor pleaded guilty without being advised that knowledge that he possessed the relevant legal status was an element of the offense. And we acknowledge that after Trujillo, that plain error affects Mr. Tignor's substantial rights only if there's a reasonable probability that he would have otherwise gone to trial. So the question for this Court today is whether, but for the rehafe error, there is a reasonable probability that Mr. Tignor would not have pleaded guilty but would have insisted on trial. And the answer to that question is yes. The reasonable probability standard is met because Mr. Tignor had a plausible defense to the charge under rehafe. Under rehafe, the government was required to prove that Mr. Tignor possessed the relevant status and also that he knew he possessed the relevant status. That's the key. Did he know it? Yes. Yes, Your Honor. Clearly, he knew it. No, Your Honor, that's not true. From the beginning, he was telling the officers that he had a gun, that he had been essentially convicted, but after five years, he could carry it again. So he knew he had been a convicted felon. Your Honor, he knew he had a prior conviction, but that's not the relevant status for purposes of this offense. So rehafe makes clear that a defendant who has a mistaken impression concerning the legal effect of some collateral matter that results in his misunderstanding the full significance of his conduct doesn't have the mental state required for a 922g offense. And so here, the relevant status is that he had a prior conviction for a crime punishable by imprisonment for a term exceeding one year. Now, even though that may seem like a straightforward question, it's not. That's a statutory term of art that has a specific meaning under 921a20. And under 921a20, it specifically excludes any conviction for which the defendant has had civil rights restored unless the restoration expressly provides that the defendant may not ship, transport, possess, or receive firearms. And so here, there is reason to believe that Mr. Tidner mistakenly believed that his civil rights had been restored and that he could lawfully possess a firearm. Did you present that argument in your opening brief this year? I know you presented it in your reply. Yes. So we presented this argument in our reply brief for the first time, and you may be wondering about waiver. And it's not waived because we had our own argument for what the substantially affects prong of the plain error test required. This court rejected that argument, and we simply responded to what the government argued in their opposition brief. And just for some authority that this isn't a waiver, I would point you to the case United States v. Zander, which addresses a similar circumstance where the defendant believes that argument has been preserved and so only argues harmless or doesn't argue plain error in their opening brief. And in that circumstance, this court has held there's no waiver. The defendant's not required to anticipate alternative arguments on the standard of review. And so just to return to my explanation of why there's reason to believe that Mr. Tidner didn't have the relevant status. So 921A20 specifically says that the term crime punishable by imprisonment for a term exceeding one year doesn't include any offense for which the defendant has had civil rights restored. And here, as Judge Kelly referenced, it seems pretty clear that Mr. Tidner thought his possession of the firearm was lawful. That's what he maintained throughout the proceedings. And his conduct at the time of the offense also suggests that he called the police to his home where he was openly possessing the firearm. He told the police that he had it. On top of that, his conviction was old and that the procedural history was complicated. And then under Texas law, the civil rights that he was most likely to exercise and to know about, and that includes the right to vote and the right to possess a firearm at his home, were in fact restored. So this evidence that he believed that he could possess a firearm, it actually does tend to negate the mens rea element here, which required him to. Well, sorry to interrupt you, but. Go ahead. So it seems to me that there is a distinction of whether he thought, and this goes to Judge Kelly's question, whether he thought he was legally entitled to possess the gun under Texas law. That's not, I don't think, correct me if I'm wrong, material under Rahif. What is material is whether he knew he had a felony conviction. And going back to Judge Kelly's question, so at sentencing, he says, I was in Texas for 23 years. Five years after your felony conviction, you were allowed to possess a weapon on your home for your protection. Now, I understand your argument about restoration of civil rights. If we reject that based on waiver or any other gram, wouldn't we be required to say that he fails at prong three of plain error because he acknowledged at sentencing that he was mistakenly thinking that he was allowed to possess the gun, but he knew that he had a felony conviction. He tells the judge that at sentencing. Your Honor, sort of several parts of the response. So first, again, his admission that he has a felony simply doesn't satisfy the Rahif element for a 922-G1 offense. And so here, again, it doesn't just mean a crime punishable by imprisonment for a term of one year, as you might think those words mean. That's a specific legal term. And for example, it already excludes, for example, misdemeanor offenses that are punishable for up to two years. It excludes antitrust offenses. So it doesn't just mean what it says. And so his admission that he knew he had a Texas felony actually doesn't satisfy the mental state requirement under Rahif. And then going back to Judge Kelly's point, again, you know, here, the mental state requirement, he does have to show, or if Mr. Tigner, sorry, I'm just going to avoid the double negative by turning this around. So if Mr. Tigner did believe that he could lawfully possess the firearm, that does tend to negate the mental state element under 922-G1. And that gives him a plausible defense to the charges. And it should lead you to conclude that there's a reasonable probability he wouldn't have pleaded guilty if he knew the elements under Rahif. So if our brother at the bar or brother on the bench, Neil Gorsuch, were still with us, at this point, he would say, well, okay, if I spot you the first three prongs of a plain error review, how do you get past the fourth prong? How do these facts seriously affect the fairness, integrity, or public reputation of the judicial proceedings? Three points. I have a real problem with that. I can understand the technical arguments, but you think if I went out and told the man on the street about this case, they'd say, oh, this is terrible. This is not fair. They'd probably shrug, right? I disagree, Your Honor. And I have a couple of responses. So first, Mr. Tignor may in fact be innocent. If Mr. Tignor sincerely believed that he could lawfully possess the firearm and also believed his civil rights had been restored, then he was innocent of the offense. And this isn't just a technical argument. If he believed it or if that was so? If he believed it. So the reason that the Supreme Court, you know, reversed decades of precedent in Rahafe is they said, look, in criminal cases, we presume scienter, right? This isn't a technical argument. This isn't I mean, it is based on the language of the statute, but it's also derives from fundamental criminal law principles that it's important that people have the ability to know why their conduct is wrongful or not. And so if Mr. Tignor mistakenly believed that he could lawfully possess firearms and that his civil rights were restored, then he was not in a position to know that his conduct was wrongful. And then there is something wrong with holding him liable for that crime. So and I think this it's here. It's useful to consider some other 922G offenses. So, for example, in Rahafe or in the Second Circuit case Baldi, you have someone who is being. Can you slow down just a little? Yes, Your Honor. So, for example, in Rahafe and in the Second Circuit case Baldi, you have someone who's charged with 922G5A for possessing a firearm when he is illegally or unlawfully in the United States. Now, before Rahafe, if someone didn't know that they were illegally or unlawfully in the United States, for example, because this is the example used in the Supreme Court case because they were brought to the country as a child and simply didn't know that they weren't a citizen or that they were undocumented. Or as in the Second Circuit case Baldi, because they were confused about the terms of their parole. You know, under Rahafe, that person has a defense and it's not simply a technical defense. It's because there was no way for them to know that it was unlawful for them to possess the firearm. And this is especially important in 922G cases because it's lawful generally to possess a firearm, especially as Mr. Tigner did in this case in the home. It's not just lawful. It's constitutionally protected. And so for those reasons, requiring the government to prove that the defendant knew their legal status, it's not just a technical requirement. This isn't a loophole that Mr. Tigner is trying to go through. This is something that's fair and it's consistent with the law that's required by the Supreme Court. So first, he may be innocent. So let's get to, and I want to probe that very point of whether or not your arguments would entitle him to an adjudication that he was innocent. Let's say this was tried on stipulated facts, hypothetically, and that the parties agree that he thought he could legally possess the gun under Texas law. Number two, that he knew that he was a felon. Number three, he knew that all of his civil rights hadn't been restored. And I realize you would not stipulate to that. And four, that he knew that he was a felon. But he thought, again, on stipulation number one, that he thought that that would not preclude him from possessing a gun under Texas law. In a bench trial, based on those stipulated facts, he'd still be convicted, right? That he was a felon. I think he would be convicted on those stipulated facts, but not because he knew he was a felon. It would be because he knew his civil rights were not restored. So it really boils down to whether we consider that waived, and if we don't consider it waived, whether he thought that he had satisfied his burden at Prog 3 to believe that because he thought under Texas law that he could possess a gun, that all of his civil rights had been restored, right? I mean, that's where the rubber meets the road. Yes, Your Honor. I think that is where the rubber meets the road. And I think it's useful to really drill down at what Prog 3 means here. So it's a reasonable probability. Counsel, I'm going to now echo Judge Kelly. Will you slow it down just a touch? Yes, Your Honor. Thank you. So in this context, reasonable probability means... No, I mean, if you'd slow it down a touch, it doesn't mean keep going at the same pace. Just slow it down. So reasonable probability means a probability sufficient to undermine confidence that he would have pleaded guilty in this case. So first of all, it's not a preponderance standard. It's just a probability sufficient to undermine confidence that he would have made the same decision. And then also, the question is not whether he would have won at trial. It's whether he would have decided to go to trial. And so here, based on this record, I think your confidence should be undermined that if Mr. Tigner was told, hey, the government has to prove that you knew your civil rights were not restored. You knew you could not possess a firearm. I think that my confidence is undermined that he would have pleaded guilty. We know that he strongly believed his possession was lawful. He is somebody, you know, the record shows he talked about this a lot with his attorney. He describes himself who takes his constitutional rights very seriously. And all of those things should give us pause and make us wonder, maybe this guy would have made a different decision. And one last point I really want to make is when it comes to this reasonable probability standard, the Supreme Court has said that you can meet it even if there's no chance that you would win at trial. You look at the entire record on a case-by-case basis and say, would this defendant have made a different decision? And I think on this record, there is a reasonable probability that he would have. And I'd like to reserve any remaining time for rebuttal. Thank you, Your Honors. Now that we're off the clock, it's a good idea for oral advocates, when they hit a period in a sentence, to pause before they start the next sentence. Thank you. Counsel, we're ready to hear from you. May it please the Court, I'm Carl Schock representing the United States. I'm going to begin by briefly addressing the waiver issue and then talk about why this defendant knew that he had the relevant status. And then I'm going to get the civil rights restored argument, but I'm going to place that third just so you know that I will be getting to it. First, on the waiver issue, I do think there is a waiver issue not only on the civil rights restored argument, but on the question generally of whether there was a reasonable probability that this defendant would have gone to trial instead of pleading guilty. In the defendant's opening brief, he essentially went all in on this legal standard argument, which is that it didn't matter what he would have done. And there was never any suggestion in his opening brief at all that he would have gone to trial, that he wouldn't have pleaded guilty, that he believed he had defenses. None of that showed up at all because the entire argument was that it didn't matter what he would have done. In Trujillo, this court rejected those exact arguments and said, yes, it does matter. The question is reasonable probability. And so I do think the issue is waived because the first time it was ever raised as a reply brief. Now, waiver aside, the defendant can't satisfy the third problem. As this court explained in Trujillo, where the evidence supporting the defendant's knowledge of status is strong or where the defendant admitted knowledge of that status, we can assume that the defendant would have pleaded guilty anyway. And I want to be clear about what Rahif says is the requisite knowledge. The knowledge is not that his possession of the gun is unlawful. Rahif specifically says that is the ultimate legal question. And a mistake of law as of that question is not a defense. What he needs knowledge of is that he was convicted of a crime punishable by a year in prison. And, yes, that encompasses the civil rights restored argument, which I'll get to in a moment. But that's the relevance. Here we have both strong evidence supporting his knowledge. The defendant here knew that he had been convicted of a crime punishable by more than a year because he was sentenced to seven years in prison. And he actually served two of those years. And as several courts have pointed out, a defendant who served more than a year in prison cannot plausibly argue that he didn't know he was convicted of a crime punishable by more than a year in prison. Mr. Schott, here, the analogy is that he was given 10-year shock probation. And so Ms. Shedd argues that, well, he had a reasonable expectation. I mean, he could have thought that the two years was for the probation replication, not for his original crime. So how do you respond to that? So if he had never served any time in prison on this offense and had only gotten the probation, then I think he would have a stronger argument because that was actually one of the very situations that Rahif acknowledged. Here, he did ultimately serve. Now, the question of whether he understood as a legal matter that that time served was for his underlying conviction or for some other act that was a probation violation. I don't think it matters here because, regardless, he knew that whatever he had done was punishable by more than a year in prison because he actually served that time. I also think, and several courts have acknowledged this, that where the defendant pleaded guilty to his prior offense, we can assume that he was told of the maximum penalty for that crime in accordance with Texas law. But the other point I want to make is that we don't have to assume anything here about his knowledge because the defendant here effectively admitted that he knew he was a felon. His whole argument at sentencing was that he thought he was allowed to possess the gun because Texas law permits a felon to possess a gun at his home five years after a conviction. And there are two relevant premises to that argument. First of all, he knew he had a felony conviction because otherwise that statute wouldn't apply. And second of all, and this is where it really gets to the heart of the defendant's argument, he knew that his conviction imposed at least some restrictions on his possession of the gun, specifically that he couldn't possess it outside of his home. And so, therefore, he understood that all of his civil rights had not been restored. And so that leads into my point on their argument, which is, first on the civil rights restored argument, let's set aside the waiver issue because I do think the issue is waived. And I've already mentioned that. I also do not think that it is clear that the knowledge requirement should apply to that particular exception effectively to the crime punishable by a year imprisonment because it really does go to the ultimate legal issue that indisputably is not a defense. It's essentially an argument that, well, I thought it was lawful under state law, and therefore I can't be convicted under 922 G. So I don't think that it's necessarily a foregone conclusion that the knowledge element applies to that. said it was not addressing how the knowledge element applied to other 922 G offenses. But let's assume all of that. And let's give the defendant the benefit of the doubt, assuming that the knowledge element does apply to that question. There's no question that this defendant knew as a factual matter that all of his civil rights had not been restored. And that's as a legal matter. Having one's civil rights restored means that all of one's civil rights must be restored, including, importantly, an unrestricted right to possess firearms. I think it may be the nature of the Zoom, but as we said to your colleague, slow it down just a touch, please. Pause between sentences, as I said before, so we could follow you a little clearer. Yeah, thank you. So and that's that's good advice, because I'm getting to really the heart of the issue here. As a legal matter, the legal definition of having one's civil rights restored means that all of one's civil rights must be restored, including an unrestricted right to possess firearms. And so what the defendant's knowledge is, the defendant does not need knowledge of the legal definition of that phrase. Hold on. Not so quick. Not so quick. Yes. Is that right? Do we have does he have to believe that all of his rights have been restored, including the right to possess firearms? Or if he just thought that his rights to possess firearms had been restored, wouldn't that be enough? Two responses that. As a legal matter, and there are cases, one, for example, from this court, although there are several, is United States versus Flower 29 F third 530. And it says that as a legal matter, that term means all of one's civil rights, including an unrestricted right to possess firearms. So that's the first point. My position is, if the knowledge element applies at all to civil rights being restored, it is not a defense for him to say he misunderstood what that term meant. He would have to show that he had knowledge of the facts that satisfy the legal definition. And there's no question here that he knew that he did not satisfy that legal definition because he knew that he did not have all of his civil rights restored. In particular, he knew that he did not have the right to possess a firearm outside of his home. He also has given no indication that he believed other civil rights have been restored, which include the right to serve on a jury, the right to hold public office. And so my point is, I'm not sure that knowledge would require or would apply to that civil rights restored because I think it gets to the ultimate legal issue. But even if it did, he had knowledge as a factual matter of the facts necessary to satisfy the undisputed legal definition. Now, the final point that I want to turn to is the heart of the third prong, which is the question is not whether he might have had some theoretical defense, but it's whether he would have whether there's a reasonable probability that he would have gone to trial rather than pleading guilty. And here he wouldn't have for three reasons. First of all, for pleading guilty, he did get a three offense level reduction for acceptance of responsibility, which reduced his guideline range by 25%. Second, if he had gone to trial, not only would he not have gotten that reduction, but all of the facts underlying that prior conviction would have been admissible for the government to have to prove his knowledge of his felony conviction. That would have included that this prior offense was an aggravated assault where he kicked his wife in the stomach during an issue of domestic violence. It would have included that when he was placed on probation, he absconded from monitoring potentially with a gun. That evidence would have come in. The third point is he realistically would have had nothing to gain by going to trial. The facts of his offense were undisputed. He told the deputies he had a gun. One of them took the gun from his pocket. So there was no question that he knowingly possessed the gun and a jury could easily have inferred his knowledge from all the things we've talked about today. Most importantly, the fact that he actually served more than a year in prison. And in fact, this court has said in at least an unpublished case, United States versus Arthur's 2020 Westlaw 5105672, that the jury even could have inferred his felon status from the mere existence of that felony conviction. And so there's no reasonable probability that in the face of all of the evidence that I've spoken about today, she would have gone to trial in the hope that the jury would have bought one of these what I consider extremely weak defenses. And that is Mr. Chuck, why would the facts of the prior conviction have presumably why should we assume that those would have been admissible and evidence? Wouldn't there be a pretty good argument if this had gone to trial under Rule 403 that that you can you can easily present the document and you can easily acknowledge that there is a prior felony conviction. And the maybe the egregious facts about kicking a domestic partner in the stomach and all of that would be unfairly prejudicial. Because so certainly what would not be enough is presenting evidence of the conviction that certainly used to work before knowledge of status became an element. But now the mere fact that he had a conviction is not enough. So the government would have to show that he knew that this conviction he had was punishable by more than a year. And I believe that a very and courts have said this, that one of the ways the government can do this is by showing how egregious the facts were, because if a defendant is convicted of, for example, some minor assault for slapping somebody in a bar, they may not realize that that is a felony conviction. If they're convicted of aggravated assault for kicking their wife in the stomach and then running away from probation with a gun, that is stronger evidence of knowledge. Um, the final point that I just like to make is that I think this case really should be resolved like the Trujillo case in Trujillo. And that's the case. We submitted a supplemental authority in the main case from this circuit on this point. And in that case, uh, the court found there was no reasonable probability. The defendant would have foregone a guilty plea where the defendant had been sentenced to prison for more than a year and actually served more than a year in prison. And in fact, in Trujillo, the court simply said that he had served four years on six offenses. So it wasn't even necessarily clear that any one of those was for more than a year here. We know that his conviction itself was for more than a year. In this case, we have all the same elements in Trujillo. Plus, we have the implicit admission that he made it sentencing that he knew he was a felon, um, but thought that Texas law permitted him to possess the gun. Also getting to Judge Lucero's point briefly on the fourth prong of plain air review, Trujillo also held that a defendant cannot satisfy the fourth prong of plain air review where the evidence is overwhelming and uncontroverted. And I think that other than the civil, uh, civil rights restored argument, which I think, um, I hopefully have, uh, explained away, um, there is no question that he had the requisite knowledge. And so this would not satisfy the fourth prong, even if he could get past the third prong. And so unless the court has any further questions, the government requests that the conviction here be affirmed. Thank you. We thank you for seating 30 seconds. Counsel? Your Honor, just a few points quickly. Just on the waiver point, uh, this is clearly not waived under Zander. That's 794 Federal 3rd 1220. And I would look to note five. And I want to emphasize that Mr. Tigner has a plausible defense. And with respect to that, his statement that he knew his possession at the home was lawful was not a statement that he knew possession outside the home was unlawful. And one of his themes at sentencing was really that possession at the home is one of the most protected sort of least harmful forms of possession. So he was really just emphasizing the mitigating nature of his offense. He wasn't speaking to his knowledge at the time of the possession. And then third, just about whether he would have gone to trial, the possibility that he would have been acquitted was worth risking an additional nine to 21 months imprisonment. That's what the three guidelines levels represented. And it's even further minimized when you take into account that he had a downward variance and departure arguments. And then also, again, under Lee, to the extent you think that his defense, it's plausible, but even if it's weak, that doesn't mean he can't meet the third prong. And for those reasons, I would ask you to vacate his guilty plea. Thank you, Your Honor. Thank you, Counsel. Counselor excused. The case is submitted and the court will take a seven minute recess and then we'll finish the next two cases. Mr. Huron, if you'll do whatever to give us a seven minute recess, please. Thank you, judges. Thank you, counsel. I'll move everyone into the waiting room for a brief break. Thank you.